## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER JOY F., [1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 20 C 6891 |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER[3]

Before the Court is Plaintiff Jennifer Joy F.'s motion to remand the Administrative Law Judge's ("ALJ") opinion denying her application for disability benefits. (D.E. 22.)

I.     **Procedural History**

Plaintiff applied for benefits in February 2018, alleging she became disabled on January 26, 2018, due to heart disease, diabetes, depression, anxiety and post-traumatic stress disorder ("PTSD"). (R. 235.) On October 28, 2019, Plaintiff and a vocational expert ("VE") testified before the ALJ, and on December 3, 2019, the ALJ denied Plaintiff's application for benefits, finding her not disabled under the Social Security Act (the "Act").[4] This appeal followed.

---

[1] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 14, 2021, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 12.)

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

## II.      The ALJ Decision

The ALJ analyzed Plaintiff's claim using the Social Security Administration's ("SSA")
five-step sequential evaluation process. At Step 1, the ALJ found Plaintiff had not engaged in
substantial gainful activity since her alleged onset date. (R. 29.) At Step 2, the ALJ determined
that Plaintiff had multiple severe physical impairments (including coronary artery disease, chronic
angina, hypertension, diabetes and obesity) and severe depressive disorder and anxiety disorder.
(R. 30.) At Step 3, the ALJ concluded that Plaintiff's impairments, alone or in combination, did
not meet or medically equal the severity of one of the SSA's listed impairments. (R. 30-31.) As to
Plaintiff's mental impairments, the ALJ determined that she did not meet Listings 12.04, 12.06,
and 12.15 because Plaintiff had only mild limitation in understanding, remembering or applying
information and in concentrating, persisting or maintaining pace; and moderate limitation in
interacting with others and in the ability to adapt or manage oneself.[5] (R. 31-33.) Next, the ALJ
assigned Plaintiff a residual functional capacity ("RFC") to perform light work with postural and
environmental limitations, and limited to performing simple, routine tasks; occasionally
interacting with supervisors, co-workers and the public; and making simple work-related
decisions. (R. 33.) At Step 4, the ALJ concluded that based on the VE's testimony, Plaintiff could
not perform any past relevant work but that at Step 5, jobs existed in significant numbers in the
national economy that she could perform, and thus she was not disabled under the Act. (R. 44-46.)

## III.      Analysis

On appeal, Plaintiff focuses solely on her mental impairments, arguing that the ALJ erred
in determining at Step 3 that they did not meet or medically equal the severity of Listings 12.04,

---

[5] To meet or equal Listings 12.04, 12.06, and 12.15, a claimant must satisfy the Listing requirements of Paragraphs A
(the medical criteria) and B (an "extreme limitation of one or marked limitation of two" of the four areas of mental
functioning), or Paragraphs A and C (having "only marginal adjustment" to the needs of daily life despite relying on
ongoing medical treatment). 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Part A, 12.00; *see also* 20 C.F.R. § 404.1520a.

12.06 and 12.15, and in determining her mental RFC. (D.E. 23: Pl.'s Mem. at 4.)[6] Both claims are based on arguments that the ALJ erred in rejecting the opinion of Dr. Kasprzyk and in not calling an independent medical expert to testify at the hearing. We address both arguments.

### A. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal citations and quotations omitted).

### B. The ALJ's Decision to Reject the Opinion of Dr. Kasprzyk Was Supported By Substantial Evidence.

Sandra Kasprzyk, R.N., Psy.D., completed a mental impairment questionnaire in June 2019 after conducting an assessment of Plaintiff. Dr. Kasprzyk checked boxes indicating that Plaintiff had moderate difficulties in activities of daily living ("ADLs"), maintaining social functioning, and concentration, persistence or pace; that she had experienced one or two episodes of decompensation within a 12-month period, each of at least two weeks duration; and that she was

---

[6] Plaintiff briefly refers to her physical impairments while disputing the ALJ's conclusions about her mental impairments. She argued that the ALJ erred in giving "short shrift to the impact of [her] heart attacks on her mental health" and that the ALJ's determination that the state agency consultative examiner's opinion persuasive was inconsistent with his rejection of the opinion of Dr. Kasprzyk, who also examined Plaintiff only once. (Pl.'s Mem. at 11-14.) Plaintiff does not argue that the ALJ erred in assessing her physical impairments, and any "perfunctory and undeveloped arguments" on this issue are waived. *Krell v. Saul*, 931 F.3d 582, 587 n.1 (7th Cir. 2019).

limited by her psychological symptoms to the point that she had "no useful ability to function" in the areas of completing a normal workday and workweek, performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (R. 1104, 1106.) Dr. Kasprzyk also indicated Plaintiff's "residual disease process . . . has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (R. 1106.)

"[T]he most important factors" in evaluating a medical opinion "are a medical opinion's 'supportability' and 'consistency' with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (quoting 20 C.F.R. § 416.920c(a)). The ALJ determined that these extreme functional limitations were neither consistent with the record nor supported by Dr. Kasprzyk's own underlying examination. Plaintiff contends that the ALJ's reasons for rejecting Dr. Kasprzyk's opinion were "inadequate" and that the ALJ "overlook[ed]" and "ignore[d]" portions of Dr. Kasprzyk's opinion (Pl.'s Mem. at 10), but Plaintiff's arguments ignore and overlook the ALJ's explanations for the decision to reject Dr. Kasprzyk's opinion, which was supported by substantial evidence.

### 1. Supportability

The ALJ explained that Dr. Kaspryzyk's opinion, which consisted almost entirely of "placing a mere check mark on an attorney generated boilerplate form," lacked any supporting explanation or analysis. (R. 43.) However, the ALJ did not assume that Dr. Kasprzyk's opinion must "take a certain form" as Plaintiff contends. (Pl.'s Mem. at 10.) Rather, the ALJ properly considered whether Dr. Kasprzyk presented "supporting explanations . . . to support [] her medical opinion." 20 C.F.R. § 416.920c(c)(1). As there were none, particularly as to Dr. Kasprzyk's

opinion that Plaintiff met the Paragraph C criteria of the Listings (meaning Plaintiff "rel[ied], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [her] mental disorder," but nevertheless had only "marginal adjustment" to the requirements of daily life), the ALJ found the opinion unpersuasive. (R. 43.)[7] Likewise, contrary to Plaintiff's contentions, the ALJ adequately explained that Dr. Kasprzyk's underlying exam did not support her opinion. The ALJ acknowledged Plaintiff showed severe levels of anxiety and depression, which was consistent the ALJ's determination that her depression and anxiety were severe, but the ALJ explained that on examination, Plaintiff was oriented and well-groomed and had a euthymic mood, intact insight and judgment, which did not support the extreme limitations in Dr. Kasprzyk's opinion. (R. 39, 43-44.) Although Plaintiff contends that the ALJ "played doctor" because the ALJ "is not competent" to state that Dr. Kasprzyk's exam was "unremarkable" (Pl.'s Mem. at 12-14), "[t]his explicit weighing is precisely within the purview of the ALJ – and it is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke*, 62 F.4th at 1068.

## 2. Consistency

In addition, the ALJ properly "examined Dr. [Kasprzyk's] medical opinion[] for consistency with the record . . . and found [it] lacking, articulating . . . those analyses in his opinion." *Id.* at 1068-69. The ALJ determined that contrary to Dr. Kasprzyk's opinion, the evidence showed that Plaintiff's "symptoms appeared well managed with intermittent prescription

---

[7] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Part A, 12.00. In addition, the ALJ found Dr. Kasprzyk's opinion was internally inconsistent and "misinterpret[ed]" the Listing requirements because it indicated that Plaintiff had only moderate limitations in the Paragraph B criteria but that she met the Paragraph C criteria. Based on Dr. Kasprzyk's errors in applying the Listings, the ALJ concluded that she was not familiar with the SSA's definitions and standards. Plaintiff's contention that Dr. Kasprzyk was indeed familiar with them (Pl.'s Mem. at 10-11) does not detract from the ALJ's reasoning or justify a conclusion that such reasoning was not supported by substantial evidence.

medication dispensed by her internist," specifically Xanax or Zoloft, which the ALJ described as "relatively minimal" mental health treatment. (R. 39.) The ALJ found the record showed Plaintiff has "never been psychiatrically hospitalized or sought emergent or crisis treatment related to her psychiatric complaints." (R. 38.) The ALJ acknowledged that Plaintiff "intermittently" presented as sad, depressed and/or tearful at exams, but found that "[m]ental status examinations by multiple medical providers are generally unremarkable, describing [Plaintiff] as alert, oriented with a normal mood, affect and behavior" and "judgment, insight, attention and concentration are within normal limits." (R. 38-39.)[8] The ALJ thus concluded that the "overall record evidence generally demonstrated benign . . . mental exams with conservative treatment," which was inconsistent with the extreme limitations in Dr. Kasprzyk's opinion. (*Id*.)

Contrary to Plaintiff's arguments, the ALJ did not "play[] doctor" in determining that her treatment was "conservative" and her symptoms were "well-managed." (Pl.'s Mem. at 7-8, 12-13.) Instead, the ALJ "was just considering Plaintiff's condition and treatment – as required – and providing additional facts in support of her credibility analysis." *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). ALJs may "appropriately consider[] and weigh[] the conservative treatment" a claimant receives, despite a doctor not referring to the treatment as "conservative." *Prill v. Kijakazi*, 23 F.4th 738, 749-50 (7th Cir. 2022) (affirming ALJ's decision denying benefits, which relied on the determination that the claimant's "treatment—injections, orthotics, and physical therapy—was conservative"). *See also Hohman v. Kijakazi*, 72 F.4th 248, 252 (7th Cir. 2023) (upholding ALJ's determination that the claimant's "course of treatment has been

---

[8] Contrary to Plaintiff's contentions, the ALJ did not ignore her exams with her internist, the state agency psychologist, or the endocrinologist (Pl.'s Mem. at 7-8), but explicitly considered them. Although the ALJ may have weighed and considered the evidence in different parts of the opinion, "[a]n ALJ need not rehash every detail each time he states conclusions on various subjects." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

conservative," as "medications effectively alleviated her pain symptoms, and the record lacked evidence that she had sought more aggressive treatment"). Plaintiff suggests that there is a "question as to whether, subject to powerful antidepressant medications [Xanax and Zoloft], [she] is able to function on a regular and continuing basis." (Pl.'s Mem. at 7.) But this argument merely "amount[s] to [a] disagreement[] with the [ALJ's] conclusions, and we decline [Plaintiff's] invitation to reweigh the evidence." *Crowell v. Kijakazi*, 72 F.4th 810, 818 (7th Cir. 2023). Like the cases cited above, the ALJ's decision to describe Plaintiff's treatment as conservative, and to weigh this factor against Dr. Kasprzyk's opinion, was supported by substantial evidence.[9]

### 3. Plaintiff's Self-Reports of Daily Functioning

The ALJ also properly found Dr. Kasprzyk's opinion inconsistent with Plaintiff's "self-reports of daily functioning." (R. 43.) The ALJ did not, as Plaintiff contends, equate her daily activities with an ability to perform a full-time job. (Pl.'s Mem. at 7.) While "[a]n ALJ may not equate activities of daily living with those of a full-time job[, ] an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (internal citations omitted). Here, the ALJ acknowledged that Plaintiff's "ability to engage in social and other activities of daily living is not in and of itself dispositive of whether [she] is or is not disabled," but properly

---

[9] Plaintiff also contends that the ALJ drew an improper inference from her failure to pursue mental health treatment because the ALJ did not discuss her testimony "that money was an impediment to her obtaining mental health care," specifically a high insurance deductible. (Pl.'s Mem. at 14.) But as the ALJ noted, Plaintiff also "testified that she is not receiving any mental health counseling because she 'had seen counselors in the past but has not found a good fit for that yet.'" (R. 34.) And, despite the minimal mental health treatment Plaintiff received, the ALJ determined that the evidence showed that Plaintiff's treatment was well-managed. Thus, even if the ALJ was wrong for not considering Plaintiff's high insurance deductible, "Plaintiff has not shown that it caused any harm." *Deborah M.*, 994 F.3d at 790.

determined that "the discrepancy" between Plaintiff's testimony regarding the intensity and persistence of her impairments and "the corresponding extreme limitations . . . raises reasonable question as to whether [she] is as limited as she alleges in light of [her] admitted level of activity," which included caring for her personal hygiene, driving, cooking, doing most household chores, and attending her husband's concerts, as well as Plaintiff's ability to participate appropriately at the hearing. (R. 39-40.)[10]

### 4. Plaintiff's Relationship with Dr. Kasprzyk

The ALJ also found Dr. Kasprzyk's opinion less persuasive because it was "based on her direct clinical examination of the claimant which is limited to an initial intake session, 4 hours of testing and a feedback session and fails to provide an opinion of the claimant's functioning during the entire relevant period at issue." (R. 43.) Plaintiff argues that this finding was inconsistent with the ALJ's determination that the opinion of a one-time state agency consultative examination was persuasive. (Pl.'s Mem. at 11-12.) But there was no inconsistency, because the ALJ also rejected Dr. Kasprzyk's opinion based on the most important factors of consistency and supportability. Moreover, the ALJ did not err in following the regulatory instruction that an ALJ may consider the length, purpose and extent of treatment relationship (or lack thereof) because it "may [] help demonstrate[]" a doctor's level of knowledge and longitudinal understanding of a claimant's impairments. 20 C.F.R. § 416.920c(c)(3).

---

[10] Contrary to Plaintiff's contention, it was not error for the ALJ to rely on his observation that Plaintiff responded appropriately to questions at her disability proceeding. (Pl.'s Mem. at 7). "It is a routine, common-sense practice for an ALJ to observe claimants. We see no reason to criticize the ALJ for his partial reliance on his own observations in his determination of disability." *Kaplarevic v. Saul*, 3 F.4th 940, 942-43 (7th Cir. 2021).

###### C.    The Testimony of an Independent Medical Expert Was Not Required.

Plaintiff also argues that the ALJ erred by failing to consult a medical expert in determining that her impairments did not meet or equal a Listing because the state agency consultants did not consider Listing 12.15, and Dr. Kasprzyk's opinion was "new and potentially pivotal medical evidence that should have been submitted for a medical opinion." (Pl.'s Mem. at 8-9.) "[H]ad the ALJ interpreted results of highly complex medical tests on his own, that would be problematic," because "an ALJ may not play doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022), citing *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). "But the ALJ did not attempt to interpret, on his own, the significance of any of [] medical tests or procedures." *Durham*, 53 F.4th at 1095. Rather, the ALJ properly relied on the opinions of mental health experts, Plaintiff's treatment records, and Plaintiff's self-reported high level of functioning in reaching his conclusion that she did not meet or medically equal a Listing. As in *Durham*, the ALJ did not rely wholly on the state agency consultative opinions, but found them "somewhat persuasive," and "[i]nstead, the ALJ primarily relied on [Plaintiff's] treatment records," including evidence that symptoms were "largely controlled through medication," as the basis for his conclusion that Plaintiff had severe mental impairments but that they did not meet a Listing. *Id*. at 1094-95.

In addition, Plaintiff cites no authority for her argument that the ALJ could not review Dr. Kasprzyk's opinion on his own but needed to obtain the opinion of yet *another* medical expert to interpret it. An ALJ is not required to obtain medical expert evidence before making a Step 3 finding if the ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." Soc. Sec. Ruling 17-2p, 2017 WL 3928306, at *3-4 (S.S.A. Mar. 27, 2017). As explained above, the ALJ did as the regulations

required in assessing Dr. Kasprzyk's opinion and in assessing Plaintiff's RFC. The ALJ considered Plaintiff's self-reports, treatment records and the state agency expert opinions, and the ALJ's determination that the evidence did not support a finding that Plaintiff's impairments met or equaled a Listing was reasonable and supported by substantial evidence.[11]

### D. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments to the "amount to disagreements with the [ALJ's] conclusions, and we decline her invitation to reweigh the evidence." *Crowell*, 72 F.4th at 818. For example, Plaintiff acknowledges that the ALJ gave multiple reasons, including the following, for determining that she had only moderate or mild limitation in the Paragraph B areas of mental functioning: she engages in activities requiring significant concentration, persistence, and pace; clinical observations by multiple medical providers do not mention any deficiency in memory or concentration, persistence or pace; and she had no problems getting along with providers, clinicians and staff. (Pl.'s Mem. at 5-7, citing R. 31-33.) Plaintiff calls the ALJ's reasoning "illogical" and points to evidence in the record (much of which is cited in the ALJ's opinion) that she believes shows she is disabled. (Pl.'s Mem. at 4-7.)[12] But "[t]his explicit weighing is precisely within the purview of the ALJ – and it is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke*, 62 F.4th at 1068.

---

[11] Furthermore, the ALJ found that Plaintiff had severe anxiety and depressive order, which correspond to Listings 12.04 and 12.06, but like the state agency physicians (*see* R. 124-25), the ALJ did *not* find that Plaintiff had a severe trauma-related disorder like PTSD, which corresponds to Listing 12.15. There was thus no error in the ALJ finding that Plaintiff does not meet a Listing for an impairment that was not severe.

[12] Plaintiff also contends that the evidence did not establish that Plaintiff can maintain social relationships with "supervisors, co-workers, and the general public in a work-related setting, 8 hours a day, 5 days a week" (Pl.'s Mem. at 6) but the ALJ specifically limited Plaintiff to "occasionally interacting with supervisors, co-workers and the public," and gave sufficient reasons for this limitation. (R. 32-33.)

Plaintiff also contends that the ALJ's Step 5 determination was erroneous because the ALJ did not "account[] for the VE's responses to [her] counsel's hypotheticals" and relied on "the VE's response to [the ALJ's] hypotheticals only." (Pl.'s Mem. at 15.) But an ALJ only "must include in his hypothetical question all of a claimant's limitations supported by the medical record," *Durham*, 53 F.4th at 1096, and the ALJ did not find that the hypotheticals raised by Plaintiff's counsel were supported by the record.[13]

## CONCLUSION

For these reasons, the Court affirms the ALJ's decision and denies Plaintiff's motion to remand the ALJ's decision. (D.E. 22.)

**ENTER:**

GABRIEL A. FUENTES
United States Magistrate Judge

DATED: August 2, 2023

---

[13] In her reply, Plaintiff appears to suggest that the Appeals Council erred in finding evidence that she submitted after her hearing date but before the ALJ's decision (notes from an initial and follow-up appointment with psychiatrist Dana Morton, M.D.) did not show a reasonable probability it would change the outcome of the decision. (D.E. 31: Pl.'s Reply at 7-8.) These arguments, raised for the first time in the reply brief and largely undeveloped, are waived. *See Krell*, 931 F.3d at 587 n.1; *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived"). Regardless, the Court notes that the results Dr. Morton's mental status examinations were largely similar to those that were before the ALJ, and Dr. Morton's treatment was limited to medication management as Plaintiff had declined individual therapy as "not helpful." (R. 51-54.)